**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**JOY ZELLA ECHOLS**                                                                 **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION NO. 3:08CV115-DAS**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                       **DEFENDANT**

### MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of the claimant, Joy Zella Echols, for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court having duly considered the briefs of the parties, the record, and the applicable law, finds as follows, towit:

### I. PROCEDURAL AND FACTUAL HISTORY

The claimant filed an application for disability benefits under Title II of the Act and for supplemental security income ("SSI") under Title XVI of the Act on April 5, 2006. In both applications, the claimant alleged disability beginning July 13, 2005. The claims were denied both initially and upon reconsideration, and the claimant requested and was granted a hearing before an administrative law judge ("ALJ"). In a hearing decision dated February 27, 2008, the ALJ found the claimant was not disabled. The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied the claimant's request for review on June 2, 2008. Therefore, the ALJ's decision stands as the final decision of the

Commissioner. It is subject to judicial review pursuant to 42 U.S.C. § 405(g).

The claimant was born in 1953. She completed high school, and her past work was as a medical transcriptionist. In her disability report, completed at the time she filed her applications, the claimant alleged she stopped working on July 12, 2005, because of rheumatoid arthritis, heart problems, high blood pressure, and respiratory problems. She further explained that she could no longer perform her past work because her "hand right now is not [in] any condition to type. After consideration of the record, the ALJ determined that the claimant could perform less than light work including:

> the residual functional capacity [or RFC] to lift/carry 20 pounds occasionally and 10 pounds frequently. She [could] stand/walk six-hours in an eight-hour workday for 30 minutes at a time, and she [could] sit six-hours in an eight-hour workday for one hour at a time. . . . [T]he claimant [could] occasionally stoop, crouch, kneel, crawl, and she can occasionally push/pull with her right lower extremities.[1]

Following this, the ALJ concluded that the claimant's RFC did not preclude the performance of her past work.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her

---

[1] In her brief, the claimant suggests that the medical-vocational guidelines ("Grids") should be applied to this case at step five. However, the claimant has failed to provide adequate legal authority or argument sufficient to support this claim. The Fifth Circuit has held that the Commissioner "may rely on the medical-vocational guidelines to establish that work exists for a claimant only if the guidelines' 'evidentiary underpinnings coincide exactly with the evidence of disability appearing on the record.'" *Lawler v. Heckler*, 761 F.2d 195, 197 (5th Cir. 1985) (internal citations omitted).

[2] *See* 20 C.F.R. §§ 404.1520 (2009).

burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] First, the claimant must prove she is not currently engaged in substantial gainful activity.[4] Second, the claimant must prove her impairment is "severe" in that it "significantly limits h[er] physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (2009).[6] Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and/or mental demands of her past relevant work.[7] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work.[9]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*,

---

[3]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[4]20 C.F.R. §§ 404.1520(b) (2009).

[5]20 C.F.R. §§ 404.1520(c) (2009).

[6]20 C.F.R. §§ 404.1520(d) (2009). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2009).

[7]20 C.F.R. §§ 404.1520(e) (2009).

[8]20 C.F.R. §§ 404.1520(f)(1) (2009).

[9]*Muse*, 925 F.2d at 789.

402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2009); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

The claimant presents essentially one claim: that the ALJ failed to evaluate properly Dr. Greenberg's consultative examination opinion. The court agrees.

At step four, the ALJ determined that the claimant could perform her past relevant work

4

as a medical transcriptionist. The claimant had worked as a medical transcriptionist for twenty-nine years before her alleged onset date. In July 2006, the claimant underwent a comprehensive consultative examination performed by Dr. Arthur Greenberg. Among other things, Dr. Greenberg noted that the claimant had "reduced right side grip strength, right wrist tenderness and positive right Tinnel [sic] sign consistent with carpal tunnel syndrome."[10] Dr. Greenberg concluded that the claimant's ability to perform work related activities such as grasping, carrying, and wrist movement appeared to be "at least moderately impaired" due to joint pain and his noted objective findings. Though the ALJ accorded significant weight to Dr. Greenberg's assessment because it was "consistent with his objective findings, . . . and he did not rely on the claimant's subjective complaints to form his opinion," the ALJ did not accept Dr. Greenberg's findings of moderate limitations and carpal tunnel syndrome. The ALJ stated that "in deference" to Dr. Greenberg's findings, he "found some limitations in pushing and pulling" but noted that "there are no other complaints of these type of problems elsewhere in the record and she did not complain of them at the hearing." The ALJ further explained that Dr. Greenberg's findings in relation to the claimant's carpal tunnel syndrome were not supported by any objective testing.

First, the court finds that notwithstanding his statement that he would assign pushing and pulling limitations based upon Dr. Greenberg's findings, nothing in the record indicates that this was properly done. In both his decision and in propounding hypothetical questions to the VE, the only pushing and pulling limitations noted by the ALJ related to the claimant's right *lower* extremities. The court can only presume the ALJ meant the claimant's right *upper* extremities;

---

[10]Tinel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." *See Dorland's Illustrated Medical Dictionary* 1644 (29th ed. 2000).

5

however, considering that the ALJ relied upon the VE's testimony that the claimant could return to her past work as a transcriptionist, the VE having considered absolutely no limitations related to the claimant's right *upper* extremities, it was error for the ALJ to rely upon the testimony of the VE at step four.[11]

Second, the court finds the ALJ's stated reasons for not crediting Dr. Greenberg's finding of carpal tunnel syndrome and "moderate" limitations in grasping, carrying and wrist movement are not sufficiently supported by the record. The ALJ indicated that he rejected Dr. Greenberg's findings because the claimant did not testify about "th[o]se type" of problems during the hearing, and there were no other complaints of such type of problems elsewhere in the record.[12] However, the court notes that while neither the ALJ nor the claimant's attorney specifically asked her about problems with her wrist during the hearing, the claimant testified that she had "carpal tunnel" in her right wrist. Moreover, physicians notes of Dr. Arthur E. Horne, Jr., dated August 26, 2005 and June 6, 2006, document tenosynovitis of the right wrist.[13] Ultimately, because Dr. Greenberg's opinion regarding the claimant's carpal tunnel syndrome and hand and wrist

---

[11]Moreover, at step two the ALJ found the claimant's "possible carpal tunnel syndrome" constituted a severe impairment. Under the regulations, a severe impairment is one that "significantly limits" the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) (2009). Accordingly, any finding by the ALJ that the claimant had no significant limitations associated with her "possible carpal tunnel syndrome" is contradicted by his finding that it was a severe impairment.

[12]The ALJ also noted that Dr. Greenberg's findings were not supported by any "objective testing." The court finds that this reason alone is insufficient, especially in light of the ALJ's duty to fully and fairly develop the record. *See Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). And, considering the record evidence regarding the claimant's wrist impairment, the ALJ should have referred the claimant for further objective testing. *See* 20 C.F.R. § 404.1527(c)(3) (2009).

[13]Tenosynovitis is a condition marked by inflamation of a tendon sheath. *See Dorland's Illustrated Medical Dictionary* 1798 (29th ed. 2000).

limitations are the only opinion of record by an examining physician, and there is no contradictory medical evidence, it was error for the ALJ simply to reject these findings. Accordingly, the ALJ's determination at step four that the claimant could return to her past relevant work is not supported by substantial evidence.

The defendant argues that any error committed by the ALJ in finding the claimant could perform her past work was harmless because the VE testified that the claimant could perform other jobs in the national economy even considering "handling" limitations. The court disagrees. In his second hypothetical to the VE, the ALJ submitted the claimant's age, education, work history and the RFC he found in this case and added that the individual "would be limited to jobs that may require unlimited gross manipulation, but requires the ability to handle work with small objects only occasionally" and would be "unable to use a computer board or . . . use her fingers in that manner more than occasionally." The VE testified that such an individual could not perform the claimant's past work but could work as an information clerk or courier. The court finds that it is definitely less than clear whether this hypothetical question reasonably includes all of the claimant's limitations considering the grasping, carrying, and wrist movement limitations cited by Dr. Greenberg. Accordingly, the court will exercise its discretion and remand this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## IV. CONCLUSION

Based on the foregoing findings and conclusions, the decision of the Commissioner should be reversed and remanded for further proceedings. On remand, the ALJ shall determine the extent to which the claimant's carpal tunnel syndrome or right wrist/hand impairment affects her ability to perform work activity. If necessary, the ALJ shall re-contact Dr. Greenberg for any

necessary clarification of his findings and/or refer the claimant for further objecting testing. Then, after considering all of the claimant's limitations supported by the record evidence, the ALJ shall determine if there is any work the claimant can still perform. In making this determination, the ALJ shall employ the services of a vocational expert if necessary.

THIS 29th day of October, 2009.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE